UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

D.H. JOHNSON,                                      )
                                                   )
                Plaintiff,                         )
                                                   )
v.                                                 )        No.:   3:05-cv-588
                                                   )               (VARLAN/SHIRLEY)
RETIREMENT PROGRAM PLAN FOR                        )
EMPLOYEES OF CERTAIN EMPLOYERS                     )
AT THE U.S. DEPARTMENT OF ENERGY                   )
FACILITIES AT OAK RIDGE,                           )
TENNESSEE and BWXT Y-12, LLC,                      )
MAUREEN WILLIAMS, and THE JOINT                    )
ADMINISTRATIVE COMMITTEE,                          )
                                                   )
                Defendants.                        )

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on cross motions for summary judgment. In
plaintiff's motion for summary judgment [Doc. 15], plaintiff argues that defendants are
precluded under both law and equity from recouping overpayments made to him under
defendants' retirement pension plan. Plaintiff seeks a declaratory judgment that defendants
cannot recoup overpayments made to him and asks the Court to enjoin defendants from
continuing to deduct such overpayments from his monthly pension benefits. In their motion
for summary judgment [Doc. 20], defendants argue that the language of the pension plan at
issue in this case, the law of ERISA, and the common law entitle them to recoup
overpayments made to plaintiff and that doing so does not have an inequitable impact upon
him.

The Court has carefully considered the pending motions for summary judgment, as well as the briefs submitted in support of and opposition to the pending motions [Docs. 16, 19, 24, 27-30]. For the reasons set forth herein, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

## I.    Relevant Facts

Plaintiff, D. H. Johnson, retired from his job with Martin Marietta Energy Systems, Inc. ("Energy Systems") in Oak Ridge, Tennessee on January 1, 1995.[1] [Doc. 16 at 1; Doc. 19 at ¶ 1.] During his employment with Energy Systems, plaintiff participated in Energy Systems' pension plan, the Retirement Program Plan for Employees of Certain Employers at the U.S. Department of Energy Facilities at Oak Ridge, Tennessee (the "Plan," [Doc. 1, Ex. 1]), which is governed by the Employee Retirement Income Securities Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The Plan was later adopted by BWXT when it took over management of the Y-12 National Security Complex. [Doc. 1 at ¶ 3.] Defendants Maureen Williams and the Joint Administrative Committee act as the Plan Administrator on behalf of BWXT. [*Id.*]

Upon retirement, plaintiff began receiving monthly pension benefits from the Plan. [Doc. 16 at 2.] Pursuant to a Qualified Domestic Relation Order ("QDRO") plaintiff entered into on December 13, 1990 as a result of a divorce granted on October 12, 1990, plaintiff's

_____

[1]Energy Systems is now known as the Y-12 National Security Complex and is managed by defendant BWXT Y-12, LLC ("BWXT"). [Doc. 1 at ¶ 1.]

ex-wife was to receive 50% of the retirement benefits accrued to him as of the date of their divorce.  [Doc. 16 at 3; Doc. 19 at ¶ 11.]  However, employees of Energy Systems miscalculated the amount of monthly pension benefits plaintiff's ex-wife was to receive under the QDRO, resulting in her receiving $244.29 per month as opposed to the correct amount of $824.75 per month.  [Doc. 19 at ¶ 13.]  Instead, plaintiff erroneously received those funds, beginning from the date of his first monthly pension benefit payout on January 1, 1995, and until defendants discovered the error in April of 2005.  [Doc. 16 at 3; Doc. 19 at ¶ 17.]  As a result, plaintiff was overpaid $70,362.75. [Doc. 16 at 3; Doc. 19 at ¶ 16.]

Upon discovering the mistaken overpayments made to plaintiff, defendants notified plaintiff of the error and informed him, both in writing and in a meeting with him, that his monthly pension benefits would be reduced to the proper amount of $1,499.96 per month and that the overpayment would be taken out of this new amount in installments of $500 per month beginning on September 1, 2005. [Doc. 16 at 3-4; Doc. 19 at ¶¶ 18, 20.]  Plaintiff appealed defendants' decision to recover overpayments made to him, but that decision was ultimately upheld based upon defendants' determination that the Plan allowed for the recoupment of such erroneous overpayments. [Doc. 19 at 11-12.]  Defendants did in fact reduce plaintiff's monthly pension benefits by $500 per month on September 1, 2005, and continue to make this monthly deduction. [Doc. 16 at 4.]

As a result, plaintiff filed this lawsuit on December 28, 2005, [Doc. 1], alleging that defendants' decision to collect overpayments from him is not authorized by the Plan or ERISA and should therefore be enjoined by the Court.

## II. Standard of Review

In *Wilkins v. Baptist Healthcare Systems*, 150 F.3d 609, 617-20 (6th Cir. 1998), the Sixth Circuit established a district court's standard of review in ERISA matters. Under *Wilkins*, this Court has two possible standards of review. If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the Plan, this Court is required to undertake a *de novo* review of the administrators' decision. *Id.* at 613. On the other hand, where a benefits plan vests discretion with the administrators, this Court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious. *Id.* at 616 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Significantly, regardless of the standard of review applied to the administrators' decision, "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).

The parties dispute the applicable standard of review in this case. Plaintiff argues that while "the Plan does confer discretionary authority on the Plan Administrator to make determinations concerning 'benefit eligibility' and 'the interpretation and construction of Plan provisions,' the arbitrary and capricious standard of review should not apply to the Plan Administrator's actions here, because the Plan Administrator acted outside the boundaries of her discretion." [Doc. 16 at 13.] Plaintiff contends that defendants did not interpret or construe the Plan in this instance because "there is no provision which addresses the issue

4

of overpayment" and therefore went beyond the scope of the authority granted to them by the Plan by "adding terms to the Plan Document by executive fiat." [*Id.* at 14.] Defendants argue that the Plan Administrator cannot be construed to have not been interpreting the Plan simply because there is no express language in the Plan authorizing the recovery of an overpayment. [Doc. 19 at 22. Defendants further note that "[s]o long as the Plan itself is being interpreted, the abuse of discretion standard applies." [*Id.*]

In this case, the Plan states as follows:

The Plan Administrator shall have the exclusive and final responsibility and complete discretionary authority to control the operations, management and administration of this Plan (except Plan investments), with all powers necessary to enable it to properly carry out such responsibilities, including (but not limited to) the power to construe this Plan, to determine eligibility for benefits and to resolve all interpretive, equitable or other questions that arise under the Plan. The decisions of the Plan Administrator on all matters within the scope of its authority shall be final and binding.

[Plan at § 15.4(d).] The plan language of the Plan explicitly vests the Plan Administrator, here, defendants BWXT, Mrs. Williams, and the Joint Administrative Committee, with the discretionary authority to determine eligibility for benefits and to construe the terms of the Plan. Accordingly, the arbitrary and capricious standard of review applies, *Firestone*, 489 U.S. at 115, and plaintiff's argument that the *de novo* standard of review is not well-taken.

Thus, the issue now before the Court is whether defendants' decision to collect overpayments mistakenly made to plaintiff was arbitrary and capricious based upon the record in this case. "This standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the

evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian*, 152 F.3d at 520 (citations and internal quotation marks removed). Applying this standard of review requires that the plan administrator's "decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). If the decision was arbitrary, capricious, not supported by substantial evidence or contrary to the law, the decision will be overturned. *Daniels v. Sovereign Coal Corp.*, 1995 WL 230285 at **1 (6th Cir. April 14, 1995) (citations omitted). Finally, "merely because [the Court's] review must be deferential does not mean [its] review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decision only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005).

## III. Analysis

Plaintiff has presented several arguments as to why defendants should be enjoined by the Court from collecting overpayments made to him. First, plaintiff argues that defendants have no right under ERISA, common law, or the express terms of the Plan to recover overpayments from him. [Doc 16 at 4-10, 13-16.] Second, plaintiff argues that even if defendants are allowed to recoup overpayments made to him, the Tennessee state statute of limitations applicable to breach of contract claims should apply to this action and accordingly

6

bar defendants from recovering more than six years of overpayments from plaintiff. [*Id.* at 17-20.] Lastly, plaintiff contends that defendants are precluded from recovering overpayments pursuant to the doctrine of equitable estoppel. [Doc. 24 at 15-16.]

Defendants argue that the broad discretionary authority accorded to the Plan Administrator and Committee under the express language of the Plan, as well as the authority granted to them through the application of the law of trusts to ERISA disputes gives them the right to collect overpayments from plaintiff. [Doc. 19 at 10-20.] Defendants also contend that, because ERISA is governed by trust and not contract law, plaintiff's argument that their recovery of overpayments is limited by application of the Tennessee statute of limitations for breach of contract claims must be rejected. [*Id.* at 21.] Lastly, defendants argue that plaintiff has failed to establish each element of a claim for equitable estoppel and that that claim should therefore be rejected. [Doc. 27 at 14.]

Thus, there appear to be three issues to be resolved: (1) whether defendants' decision to collect overpayments from plaintiff was not supported by the evidence in this case or contrary to the law and/or language of the Plan, therefore making it arbitrary and capricious; (2) if not arbitrary and capricious, whether defendants' collection of overpayments from plaintiff is limited by Tennessee's six-year statute of limitations for breach of contract claims; and (3) if not arbitrary and capricious, whether defendants' collection of overpayments from plaintiff is foreclosed by the doctrine of equitable estoppel. The Court will address each of these issues in turn.

A.     <u>Whether Defendants' Decision to Collect Overpayments Is Arbitrary and Capricious</u>

As noted above, the applicable standard of review of defendants' decision to collect overpayments from plaintiff is the arbitrary and capricious standard of review. Defendants' collection of overpayments will not be arbitrary and capricious if it is "supported by substantial evidence," *Baker*, 929 F.2d at 1144, and "rational in light of the plan's provisions." *Davis v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988).

Plaintiff makes five arguments as to why defendants' collection of overpayments from him are contrary to the law and should therefore be enjoined by the Court. First, plaintiff argues that while ERISA provides that a plan fiduciary may bring suit for a number of specific causes under 29 U.S.C. § 1132(a)(3), none of those provisions authorize the recoupment of overpayments when, as here, the ERISA plan in question does not have a provision explicitly authorizing such recoupment. [Doc. 16 at 5.] Plaintiff spends a substantial amount of time explaining why defendants' collection of overpayments here is not an action "to obtain other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B), arguing that "any action by the Plan to recoup overpayments would be legal in nature, not equitable, because the Plan's actions are not authorized by any provision of the Plan Document...." [*Id.* at 6.] Second, plaintiff argues that under Sixth Circuit precedent, recoupment is only authorized where the ERISA plan at issue contains an explicit provision authorizing such an action, and since the Plan does not contain such a provision, defendants "may not act extra-judicially to enforce a right it does not have at law or equity....." [Doc.

24 at 4; *see also* Doc. 16 at 8.] Third, plaintiff argues that "[d]efendants do not have any general power or duty as fiduciaries to collet mistaken overpayments." [Doc. 16 at 10.] In making this argument, plaintiff attempts to distinguish this case from *Best v. Cyrus*, in which the Sixth Circuit held that, irrespective of the language of the ERISA plan at issue, a plan fiduciary has "the power and corresponding duty to act in the interests of the plan's beneficiaries, that is, to take necessary and appropriate action with respect to the required contributions and missing repayments." 310 F.3d 932, 935 (6th Cir. 2002). Fourth, plaintiff argues that the Plan's failure to specifically provide for the recoupment of overpayments must be construed against the drafter of the plan, here, defendants, and that defendants should therefore be prevented from interpreting this "ambiguity" in the Plan in a way favorable to them. [Doc. 24 at 12.] Lastly, plaintiff argues that defendants cannot collect overpayments made to plaintiff because "recoupment would be inequitable in this case" and therefore contrary to Sixth Circuit precedent. [Doc. 24 at 17.]

In support of their motion for summary judgment, defendants argue that the broad discretionary authority granted to them through the language of the Plan authorizes "the recovery of inadvertent overpayments of benefits." [Doc. 19 at 12.] Defendants contend that, because ERISA is governed by the law of trusts, "an ERISA plan document does not need to list every conceivable type of authority the Plan Administrator might be called upon to exercise." [*Id.*] Instead, a plan administrator has fiduciary obligations that "can exist even if the plan document purported to limit the responsibility of the fiduciary" and defendants cite the Sixth Circuit's decision in *Best* as supporting this proposition. [*Id.* at 17.] Defendants

contend that *Best* is directly applicable to this case in that it holds that "ERISA imposes certain fiduciary obligations on plan fiduciaries even if those obligations are not set forth in the plan document." [*Id.* at 20.] Defendants also note that plaintiff's contention that collection of overpayment is only allowed where a plan document has a specific provision permitting such recovery is a misinterpretation of Sixth Circuit precedent. [Doc. 27 at 5-7.] As to plaintiff's contention that the recoupment of overpayments would be inequitable in this instance, defendants point out that plaintiff has failed to file any financial affidavits proving that their collection of overpayments would adversely impact him. [Doc. 27 at 15.] Ultimately, defendants argue that they were not only authorized under the Plan to collect overpayments made to plaintiff, but were likely "mandated" to do so through the application of the law of trust to ERISA generally an this case specifically and therefore, their decision to do so was not arbitrary and capricious. [Doc. 19 at 24.]

In arguing that defendants' recoupment of overpayments is illegal and therefore arbitrary and capricious, plaintiff does not contend that this action is contrary to the substantial evidence. To the contrary, plaintiff admits that defendants "made a 'ministerial error' with respect to the QDRO and overpaid [plaintiff] from the date of his retirement through April 11, 2005 in the amount of $70,362.75." [Doc. 16 at 1.] Plaintiff also does not contend, as defendants note, [Doc. 19 at 7 n. 7], that recovery for overpayments is generally illegal under ERISA. Rather, plaintiff argues that "the retirement plan which governs the relationship between [plaintiff] and defendants does not give them the right to recover those

10

overpayments," [Doc. 16 at 2], thereby suggesting that defendants' action is arbitrary and capricious by being contrary to the Plan and the law as it applies to this case.

After careful consideration of the Plan and the parties' briefs, the Court first notes that, while the Plan does not have an express provision concerning overpayments, the broad language of the Plan allows for the recoupment of overpayments by defendants. It is undeniable that the plain language of the Plan grants substantial power with the Plan Administrator, giving it "exclusive and final responsibility and complete discretionary authority to control the operation, management and administration of this Plan" as well as "the power to construe this Plan, to determine eligibility for benefits and to resolve all interpretive, equitable or other questions that arise under the Plan. [Plan at § 15.4(d).] Additionally, in further explicating the responsibilities of the Plan Administrator, the Plan provides that none of the listed responsibilities should be interpreted as "limiting the generalities of the foregoing." [*Id.*] Nowhere does the Plan explicitly prohibit the recovery of overpayments. Rather, it simply does not contain a provision expressly setting forth recoupment of overpayments as an allowable action by the Plan Administrator.

Because of the lack of such express language, plaintiff argues that collection of overpayments by defendants is, *ipso facto*, barred. [*E.g.*, Doc. 16 at 8; Doc. 24 at 6-7.] In this way, plaintiff is implicitly making the argument that the Court should apply the canon of construction of *expressio unius est exclusio alterius* and determine that defendants' actions are limited to those spelled out in the Plan. However, the Court cannot in good faith apply that canon in this case by virtue of the plain language of the Plan, which explicitly does not

11

limit the responsibilities and powers of the Plan Administrator. [Plan at § 15.4(d).] As noted above, this includes the power to "determine eligibility for benefits and to resolve all interpretative, equitable or other questions that arise under the Plan." [*Id.*] Arguably, defendants' decision to collect undisputed overpayments made to plaintiff falls into the broad category of resolving an equitable question arising under the Plan – specifically, how best to resolve the problem of plaintiff being paid over $70,000 that was not due to him. Furthermore, the Court is not persuaded by plaintiff's argument that the Plan should be construed against defendants because they drafted the Plan documents. As the Sixth Circuit held in *Cook v. Pension Plan for Salaried Employees of Cyclops Corp*., "[w]here both the trustees of a pension fund and a rejected applicant offer rational, though conflicting interpretations of plan provisions, the trustees' interpretation must be allowed to control." 801 F.2d 865, 870 (6th Cir. 1986) (internal quotations and citation removed). Thus, given the expansive and expressly unlimited language of the Plan, the Court does not believe that the Plan itself precludes defendants from collecting overpayments in the way that it has here.

However, the Court's inquiry does not end there. It must also be determined whether the principles underlying the law of trusts allow defendants to recoup overpayments made to plaintiff. As noted by defendants in their briefs, it is well-established the law of trusts informs the interpretation of fiduciary duties arising under ERISA. *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996); *Best*, 310 F.3d at 933. But in upholding those fiduciary duties as they relate to the collection of overpayments, a plan fiduciary must balance the impact of overpayments upon plan beneficiaries at large against the equitable treatment of

12

the individuals from whom overpayments are sought. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1251 (6th Cir. 1992). Thus, the Court must analyze those arguably competing interests.

As the Supreme Court made clear with its holding in *Varity Corporation v. Howe*, "there is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are ordinary and natural means of achieving the objective of the plan." 516 U.S. at 504 (internal quotations removed). The Sixth Circuit has further supported this notion, most recently in *Best v. Cyrus*, when it held that "a trustee has a duty to act in the interest of the plan's beneficiaries, even though he is not specifically directed to act under the plan document, because ERISA imposes additional duties on trustees through its incorporation of the common law of trusts." 310 F.3d at 933.[2] The Court in *Best* went on to determine that the plan fiduciary there had "a specific duty to secure...contributions and repayments because 'ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries.'" 310 F.3d at 936 (quoting *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985)). Defendants argue that the application of the principles of the law of trusts results in a plan administrator having the duty to collect

---

[2]The Court notes plaintiff's attempts to distinguish *Best* on its facts, [Doc. 16 at 9-10; Doc. 24 at 10-11], but finds that this case is applicable to the case at bar in that *Best* speaks to the general fiduciary duties a plan administrator owes to a plan governed by ERISA. *Best*, 310 F.3d at 935.

overpayments from beneficiaries. [Doc. 19 at 15.] Given that the Restatement of Trusts (Second) § 250 provides that "[i]f a trustee has made a payment out of trust property to one of several beneficiaries to which the beneficiary was not entitled, his beneficial interest is subject to a charge for the repayment thereof...,"defendants' contention cannot be denied.

Those same principles of the law of trusts, however, also may ultimately counsel against recoupment of overpayment if doing so will result in hardship to plaintiff. *Wells*, 950 F.2d at 1251; *see also* Restatement of Trusts (Second) § 250. In *Wells*, the Sixth Circuit expressed concern that the recoupment of erroneous payments made to beneficiaries of an ERISA-governed pension fund, while not arbitrary and capricious, might nevertheless be unwarranted "under the principles of equity or trust law" if it resulted in hardship to the individuals from whom recoupment was sought. 950 F.2d at 1251. In advising the district court on remand to consider "the possible inequitable impact recoupment may have on the individual retirees," the Court suggested that the district court evaluate the following factors set forth by the District Court for the Middle District of Alabama in *Thorn v. United States Steel & Carnegie Steel Pension Fun*:

> [w]hether repayment would be inequitable depends on the beneficiary's disposition of the money which he was overpaid, the amount of the overpayment, the nature of the mistake made by the administrator, the amount of time which has passed since the overpayment was made, and the beneficiary's total income and effect recoupment would have on that income.

*Wells*, 950 F.2d at 1251 n. 3 (quoting *Thorn*, CV-P-1829-S (M.D. Ala. 1983)).

Here, plaintiff argues that defendants' recoupment of overpayments would be inequitable, noting that "approximately 26% of his total taxable income and over one-half

14

of his disposable income, consists of the pension benefit at issue here." [Doc. 24 at 17.]

Plaintiff further states that he relied on the monthly pension benefits he received for ten years in making preparations for his retirement, which included choosing "not to pursue any further work in his field," [*Id.* at 18], and completing a retirement and estate plan involving the purchase of insurance policies that plaintiff suggests he may not be able to afford if defendants reduce his monthly pension benefits to recover overpayments. [*Id.* at 19.] Lastly, plaintiff notes that his wife, who in 2004 made the decision to retire from her job, "has been forced to go back to work because of [defendants'] attempt to recover the overpayment." [*Id.*] In response, defendants argue that plaintiff's contentions of the alleged hardships he will suffer if collection of overpayments is continued "consist entirely of generalities" and is not supported by "any affirmative statement as to how the lowering of his monthly pension by the amount set by the plan ($500.00) a month is adversely affecting him...." [Doc. 27 at 15.] Defendants state that they have chosen to recover the overpayment amounts gradually, and not as a lump sum, so that plaintiff would be impacted "the least way possible." [*Id.*]

In analyzing the factors set forth by the district court in *Thorn*, the Court first notes that the large amount of the overpayment made to plaintiff and lengthy 10-year period over which the overpayments were made suggest, at first blush, that defendants' overpayment collection would likely be inequitable. However, these factors also point towards allowing defendants, as fiduciaries of the Plan, to collect the overpayments, given the rather substantial amount of money has been deprived from the Plan and its beneficiaries as a result. With regards to plaintiff's disposition of the overpayment monies he received, the Court

agrees with defendants that plaintiff has not definitively established that he is reliant on those funds for his retirement. Plaintiff simply makes the statement, both in his response brief and in an affidavit filed in support of his motion for summary judgment, that he has "spent the monthly benefits he received to fund his living expenses during retirement." [Doc. 24 at 18.] Aside from this bare contention, however, plaintiff has submitted no real proof that defendants' recoupment of those payments will unequivocally impact his retirement and finances more generally. Plaintiff present a number of theories regarding the impact upon him of recoupment of overpayment, such that it would likely be difficult for him to obtain employment now, if needed, and that he may not be able to continue to afford to pay for the insurance policies he bought in connection with his retirement. [Doc. 24 at 18-19.] However, these statements strike the Court as being too speculative to establish that recoupment would have an inequitable impact upon plaintiff.

Furthermore, as to the effect of recoupment of overpaid funds upon plaintiff's total income, the Court believes that the manner in which defendants are choosing to collect those funds – through an installment-type method as opposed to a lump-sum payment – sufficiently minimizes the impact recoupment will have upon plaintiff. As structured, defendants' repayment plan results in plaintiff refunding the overpayment amounts at approximately the same rate at which plaintiff was overpaid.[3] Additionally, based upon the amended monthly

---

[3]In fact, plaintiff is being allowed to spread the repayments over a slightly longer period of time, 11 years and 9 months, versus the 10 years and 9 months over which the erroneous benefit payments were made to him.

pension benefit amount of $1,499.96 plaintiff should have been receiving, the monthly $500.00 recoupment reduces plaintiff's benefit payment by 33%. Plaintiff claims that this reduction will result in a 26% decrease of is total taxable income and attempts to support this with statements concerning the breakdown of his income in his response to defendants' first set of interrogatories. [Doc. 24 at 17-18.] It is difficult to discern from plaintiff's interrogatory response exactly what his total taxable income is,[4] [Doc. 24, Ex. 1 at 4], and therefore, to precisely calculate what the effect of recoupment would be on that income. However, assuming that plaintiff's figure is correct, the Court is not persuaded that this reduction in plaintiff's income results in inequitable hardship to plaintiff.

While the Court does not deny that the recoupment of overpayments from plaintiff will invariably have an unwanted and undesirable impact upon plaintiff's finances, in this case, it does not rise to the level of being inequitable. Thus, both the unlimited language of the Plan and the applicable common and ERISA case law support the conclusion that defendants' decision to collect overpayments made to plaintiff was not arbitrary and capricious.

B.     Statute of Limitations

Plaintiff argues that any recoupment of overpayments by defendants should be limited by the application of Tennessee's six-year statute of limitations for breach of contract claims. [Doc. 16 at 17-19.] Plaintiff contends that this is "[t]he most analogous statute of limitations

---

[4]The attached interrogatory response [Doc. 24, Ex. 1, Interrogatory No. 4 at 3-4] appears to be excerpted and therefore, the Court is uncertain as to whether that response has been presented in its entirety and what the line items comprising plaintiff's total income actually are.

to an action by the Plan," [*Id.*], and that the Sixth Circuit as well as other jurisdictions have applied a breach of contract statute of limitations to "a plan fiduciary's action to enforce a reimbursement provision" [*Id.* at 18.] Defendants argue that plaintiff's claim that a breach of contract statute of limitations is applicable to this case is contrary to Sixth Circuit precedent. [Doc. 19 at 21.]

In considering plaintiff's argument as to applicable statute of limitations, the Court cannot ignore the unequivocal language of the Sixth Circuit in *Wells*, where that Court rejected the plaintiff's claim that the statute of limitations for contract claims should be applied to that ERISA dispute, noting that "ERISA is governed by trust, not contract, law." 950 F.2d at 1250 (citing *Firestone*, 489 U.S. at 110-12). Accordingly, plaintiff's argument is rejected and defendants' collection of overpayments will not be subject to the Tennessee statute of limitations for breach of contract claims.

C.    Equitable Estoppel

Plaintiff also argues that defendants' recoupment of overpayments should be foreclosed by the doctrine of equitable estoppel. [Doc. 24 at 15-16.] Plaintiff states that he "detrimentally relied on the conduct of the Defendants who assured him in 1995 that his monthly benefit payments were correct" and that defendants are therefore now estopped from taking the position that "the benefit amount was not correct after all." [*Id.* at 16.] Plaintiff further states that he "contacted the Human Resources Department at Y-12 in approximately February of 1995 to inquire about the accuracy of the monthly benefit payments to him and his ex-wife" and that, because defendants claim to not have had such contact with plaintiff,

this creates a factual dispute precluding the entry of summary judgment for defendants. [*Id.*]

Defendants argue that plaintiff has failed to establish every element of his equitable estoppel

claim and that defendants' motion for summary judgment is not defeated by virtue of this

claim.

> To establish a claim for equitable estoppel, a party must show the following:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Tregoing v. American Comty. Mut. Ins. Co.,* 12 F.3d 79 83 (6th Cir. 1993) (citing *Armistead*

*v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)).  Plaintiff has presented no evidence

that defendants had an "awareness of the true facts" or that they had any indication that the

payments being made to plaintiff were in error.  Even assuming plaintiff's claim that he

contacted the Human Resources Department at BWXT to inquire about the accuracy of

pension benefit payments to be true, this inquiry on the part of plaintiff does not, without

more, establish that defendants had any awareness of the clerical error that lead to the

overpayments made to plaintiff.  Accordingly, plaintiff has failed to establish the elements of

equitable estoppel and this claim will not bar the entry of summary judgment for defendants.

## IV.  Conclusion

For the reasons set forth herein, plaintiff's Motion for Summary Judgment [Doc. 15]

is **DENIED** and defendants' Motion for Summary Judgment [Doc. 20] is **GRANTED**, and

judgment will be entered in favor of defendants.

The Clerk is directed to enter judgment accordingly.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE